## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

ANITA FOSTER, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.

BPI SPORTS, LLC; BPI SPORTS
HOLDINGS, LLC; and GENERAL
NUTRITION CORPORATION,

      Defendants.

_____/

**CASE NO.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiff, Anita Foster, through her undersigned counsel, brings this action on her own behalf and on behalf of a Class and Subclass of persons and entities defined herein against Defendants, BPI Sports, LLC, BPI Sports Holdings, LLC (collectively "BPI") and General Nutrition Corporation ("GNC") and for her Complaint alleges, upon information and belief and based on the investigation to date of her counsel, as follows:

### INTRODUCTION

1.      This is a class action brought individually by Plaintiff and on behalf of a class and subclass of persons similarly situated, (the "Class" or "Class Members"), who purchased the weight loss dietary supplement Pro-Nutra Ultra Concentrated Garcinia ("Product") from Defendants. Plaintiff alleges that Defendants' efficacy claims for the Product are false and misleading.

2.      Sales of retail diet pills, combined with meal replacements, are estimated to reach $3.04 billion in the United States in 2014.

3.     Defendants advertise, manufacture, market, sell and distribute the Product that is sold in the growing and extremely competitive diet/weight loss dietary supplement industry as a highly effective appetite suppressant, fat burner, and weight loss pill. Although Defendants boast about the Product's efficacy in labeling and advertising, none of the promised benefits is or can be delivered by the Product.

4.     In late 2012, Dr. Mehmet Oz of the highly popular TV show "The Dr. Oz Show" claimed on his website that Garcinia Cambogia was the "Newest, Fastest Fat-Buster" and declared on his TV show, "Thanks to brand new scientific research, I can tell you about a revolutionary fat buster" with the words "No Exercise. No Diet. No Effort" on the screen behind him.

5.     In June 2014, Dr. Oz's representations regarding weight loss products, including Garcinia Cambogia, were called into question by the United States Senate's Subcommittee on Consumer Protection, Product Safety, and Insurance, where Dr. Oz was called to testify.

6.     When presented with studies refuting the efficacy of Garcinia Cambogia, Dr. Oz testified that he could not be held responsible for what companies say about their products, and that he's toned down some of his language and will publish a list of products he believes can really help people lose weight.

7.     With all the hype surrounding this new "miracle" diet pill, many dietary supplement manufacturers, including Defendants, have decided to exploit this opportunity to make money off the unassuming consumer, regardless of the science refuting their claims regarding the Garcinia Cambogia products.

8.     As a result of Defendants' unfair, deceptive, fraudulent, unfair and misleading practices, Plaintiff and Class Members have been unfairly deceived into purchasing the Product which they would not otherwise have purchased, did not receive the benefit of their bargain, or would have purchased only at a substantially lower price than that charged by Defendants.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and many members of the proposed Class and Subclass are citizens of states different from that of the Defendants (who are domiciled and incorporated in Florida or Pennsylvania and otherwise maintain their principal places of business in Florida or Pennsylvania).

10.     Defendants conduct substantial business in Illinois, including the sale and distribution of the Product, and have sufficient contacts with Illinois or otherwise intentionally avails themselves of the laws and markets of Illinois, so as to sustain this Court's jurisdiction over Defendants.

11.     Venue lies in this District, pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. In addition, Defendants do business and/or transact business in this Judicial District and are therefore subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## PARTIES

12.     Plaintiff Anita Foster is a resident and citizen of Chicago, Illinois. Plaintiff purchased the Product on April 25, 2014, from the GNC retail store #03940 located at One Illinois Center, 111 East Wacker Drive, Chicago, Illinois 60601. Prior to purchase, Plaintiff read and relied on the false claims made by Defendants set forth in this Complaint regarding the Product.

13.     BPI Sports, LLC is a Florida limited liability company with its principal place of business located at 3149 SW 42nd Street, Suite 200, Hollywood, Florida 33312.

14.     BPI Sports Holdings, LLC is a Florida limited liability company with its principal place of business located at 3149 SW 42nd Street, Suite 200, Hollywood, FL 33312.

15.     General Nutrition Corporation is incorporated in Pennsylvania with its principal place of business located at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222. GNC is the largest global specialty retailer of nutritional products, including vitamin, mineral, herbal and other specialty supplements and sports nutrition, diet and energy products. GNC has more than 4,800 retail locations throughout the United States (including more than 1,000 franchise and 1,200 Rite Aid store-within-a-store locations).

## FACTUAL ALLEGATIONS

16.     Defendants unapologetically boast about the efficacy of the main active ingredient Garcinia Cambogia in the Product, regardless of the overwhelming scientific literature refuting the claims of fat burning, weight loss, and appetite suppression.

17.     Under information and belief, Defendants had access, but knowingly and/or recklessly ignored all competent and reliable scientific evidence regarding the Product's main active ingredient Garcinia Cambogia.

18.     Defendants made false claims regarding the efficacy of Garcinia Cambogia providing weight loss and appetite management and support.

### The Product's False and/or Misleading Labeling and Marketing Claims Regarding Garcinia Cambogia

19.     On Defendants BPI and GNC's websites[1] Defendants state the following false/misleading claims:

    a)  "Recently regarded on nationwide TV as 'the Holy Grail of Weight Loss',

---

[1] Pro-Nutra Ultra Concentrated Garcinia, http://www.gnc.com/PRO-NUTRA-Ultra-Concentrated-Garcinia/product.jsp?productId=20580086&cp=3593182.4046467.20582176 (last visited Nov. 6, 2014); Pro-Nutra, http://www.pronutra.net (last accessed Nov. 6, 2014).

Garcinia is now the biggest diet craze in the country, and for good reason.";

    b)  "An active constituent of the fruit, HCA (hydroxycitric acid), is believed to have beneficial effects on appetite and weight management."; and

    c)  "This supplement offers unique benefits over other weight loss supplements on the market."

20.    Defendants makes false and/or misleading claims regarding the Product directly on their label (and copied in marketing of retailer websites) that the Product users may experience:

    a)  "Weight Loss"; and

    b)  "Appetite Support."



21.    All of the labeling and marketing claims of Defendants regarding the Product are predicated on Hydroxycitric Acid, the active ingredient in the herbal compound Garcinia

Cambogia, to inhibit the extramitochondrial enzyme adenosine triphosphate (ATP)-citrate-lyase.

### Why Defendants' Labeling and Marketing Claims are
### False and/or Misleading Regarding Garcinia Cambogia

*Appetite Suppression*

22.     Since hydroxycitric acid reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of hydroxycitric acid on appetitive variables.  The active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change. This study does not support a satiety effect of hydroxycitric acid.[2]

23.     Two-week supplementation with hydroxycitric acid alone or in combination with medium chain triglycerides did not result in increased satiety compared to placebo, in subjects losing bodyweight.[3]

24.     A similar study was performed in order to assess the effects of two weeks of supplementation with hydroxycitric acid alone or combined with medium-chain triglycerides on satiety and energy intake.  Two weeks of supplementation with hydroxycitric acid alone or combined with medium chain triglycerides did not result in increased satiety or decreased energy intake compared to placebo in subjects losing bodyweight.[4]

*Increased Metabolism, Fat Burning and Weight Loss*

25.     As Garcinia Cambogia (hydroxycitric acid) is considered to be a potential anti-

---

[2] Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. *Physiol Behav* 2000, 71:87-94.

[3] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[4] Kovacs E, Westerterp-Plantenga M, de Vries M, Brouns F, Saris W. Effects of 2-week ingestion of (-)-hydroxycitrate and (-)-hydroxycitrate combined with medium-chain triglycerides on satiety and food intake. *Physiol Behav* 2001b, 74:543-9.

obesity agent, a randomized controlled trial was conducted to evaluate the efficacy of Garcinia Cambogia for body weight and fat mass loss in overweight human subjects. Garcinia Cambogia failed to produce weight loss and fat mass loss beyond that observed with placebo.[5]

26.     A study was performed with the objective of determining the effect of hydroxycitric acid on marker substrates of altered metabolism, as well as on respiratory quotient (RQ) and energy expenditure (EE) in humans, following an overnight fast and during a bout of exercise. The hypothesis was that supplementation with hydroxycitric acid would result in an increase in fat oxidation and metabolic rate, reflected by an increase in beta-hydroxybutyrate and EE and/or a decrease in RQ. In a fasted state and following 3 days of hydroxycitric acid treatment, RQ was not significantly lowered during rest nor during exercise compared with the placebo treatment. Treatment with hydroxycitric acid did not affect EE, either during rest or during moderately intense exercise. Furthermore, the blood substrates measured were not significantly different between treatment groups under the fasting conditions of this study. The results did not support the hypothesis that hydroxycitric acid alters the short-term rate of fat oxidation in the fasting state during rest or moderate exercise.[6]

27.     A study determined the effects of 2-week ingestion of hydroxycitric acid alone or combined with medium-chain triglycerides on fat oxidation, energy expenditure and body weight. Two-week supplementation with hydroxycitric acid alone or in combination with medium chain triglycerides did not result in increased fat oxidation, 24 h EE or bodyweight loss

---

[5] Heymsfield S, Allison D, Basselli J, Pietrobelli A, Greenfield D, Nunez C. Garcinia cambogia (Hydroxycitric Acid) as a potential antiobestiy agent. *J Am Med Assoc* 1998, 280: 1596-1600.

[6] Kriketos A, Thompson H, Greene H, Hill J. (-)-Hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state. *Int J Obes Relat Metab Disord* 1999, 23:867-73.

compared to placebo, in subjects losing bodyweight.[7]

28.     A study was conducted to assess the effects of acute hydroxycitric acid supplementation on substrate metabolism at rest and during exercise in humans. Hydroxycitric acid, even when provided in large quantities, does not increase total fat oxidation in vivo in endurance-trained humans.[8]

29.     All of Defendant's claims regarding the Product and its ability to control appetite, boost metabolism, burn fat, and promote weight loss are false and/or misleading.

30.     Defendant GNC incorporates all of the Product's label claims and product images described herein on their website gnc.com.

31.     Defendant GNC is a leading retailer in the United States of dietary supplements and employs several attorneys and regulatory personnel.

32.     Under information and belief, GNC reviews all labels and marketing materials of vendors and has the ability to change false and misleading marketing material, request different product formulations, and ultimately reject products from being sold in their brick/mortar retail stores and online store.

33.     Plaintiff and Class Members were in fact misled by Defendants' representations regarding the true nature of the protein content and value.

34.     The difference between the Product promised and the Product sold is significant. The efficacy of the Product has real impacts on the benefits provided to consumers by the Product, and the actual value of the Product itself.

---

[7] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[8] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

35.     Defendants' false and misleading claims contained herein are in violation of 21 C.F.R. § 101.18(b), making the Product misbranded.

36.     Defendants' deceptive statements violate the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

37.     Illinois has expressly adopted the federal food labeling requirements as its own and indicated that "The Director is authorized to make the regulations promulgated under this Act conform, in so far as practicable, with those promulgated under the Federal Act." Additionally, "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21.

38.     Further, as explained above, Defendants' claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "A food shall be deemed to be misbranded—False or misleading label [i]f its labeling is false or misleading in any particular."

39.     The ILCS incorporates the exact language of the FDCA in 410 ILCS 620/11 by stating, "A food is misbranded- (a) If its labeling is false or misleading in any particular."

40.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") allows for individuals to seek damages for injuries sustained by such false or misleading labeling.[9]   The ICFA provides protection for consumers when purchasing products, including Defendants' Product, by stating, "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…" 815 ILCS 505/2.

---

[9] And, as discussed herein, the other relevant state consumer protection statutes.

41.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

42.     Plaintiff and Class Members would have purchased another whey protein product, if any at all, or would have only paid for the whey protein actually delivered with the Product, if they would have not been deceived by the misleading labeling of the Product by Defendants.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this class action on behalf of herself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44.     Plaintiff seeks to represent a "National Class" defined as follows:

**All persons in the United States who purchased Defendants' Product.**

Excluded from the National Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof

45.     Plaintiff seeks to represent a "Illinois Subclass" defined as follows:[10]

**All persons residing in the State of Illinois who purchased Defendants' Product.**

Excluded from the National Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

46.     Plaintiff is a member of the National Class that she seeks to represent. Plaintiff is a United States resident who purchased the Product.

47.     Plaintiff is a member of the Illinois Subclass that she seeks to represent. Plaintiff

---

[10] As used throughout, the general term "Class" refers to the National Class and Illinois Subclass, collectively.

is an Illinois resident who purchased the Product.

48.     The definition of the Class is narrowly tailored so as to include only identifiable Class Members who can be identified through Defendants' wholesale and direct sales information. The Class has no time limit because, as discussed below, the statute of limitations has been tolled by the Defendants' fraudulent concealment of the true nature of the Product purchased by Class Members.

49.     Certification of the Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the class are so numerous that individual joinder of all Class members in impracticable. On information and belief, there are thousands of consumers who have been affected by the Defendant's wrongful conduct.  The precise number of the Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from the Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

51.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a) Whether the Product, when used by consumers in a normal and customary manner and/or in accordance with Defendants' suggested use, works as advertised, marketed, and conveyed to consumers;

   b) Whether, in the course of business, Defendants represented that the Product has characteristics, uses, benefits, or qualities that it does not have when used by consumers in a normal and customary manner and/or in accordance with

Defendants' suggested use;

c) Whether the claims Defendants made and is making regarding the Product are unfair or deceptive; specifically, whether the Product provides fat burning, weight loss and/or appetite suppression properties to the consumer.

d) Whether Defendants knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Product that Defendants were claiming they would receive;

e) Whether Defendants knowingly made misleading statements in connection with consumer transactions that consumers were likely to rely upon to their detriment;

f) Whether Defendants knew or should have known that the representations and advertisements regarding the Product were unsubstantiated, false, and misleading;

g) Whether Defendants have breached express warranties in the sale and marketing of the Product;

h) Whether Defendants have been unjustly enriched by the sale of the Product to the Plaintiff and the Class;

i) Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Product;

j) Whether the Plaintiff and the Class Members who purchased the Product suffered monetary damages, and, if so, what is the measure of those damages;

k) Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, what are the amount and nature of such relief.

52. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were similarly injured through the uniform and common misconduct described above.

53. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and

her counsel.

54.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

55.     **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**ESTOPPEL FROM PLEADING AND TOLLING OF
APPLICABLE STATUTES OF LIMITATIONS**

56.     Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, which include Defendants' knowing concealment of the Product's scientifically proven inefficacy, while continually marketing the Product as a highly effective appetite suppressant, fat burner, and weight loss supplement.

57.     Defendants were and remain under a duty to Plaintiff and the Class to disclose the facts, as alleged herein. The duty to disclose the true facts arises because Defendants are in a

superior position to know the true character and quality of their products, and the Plaintiff and Class Members, in the exercise of reasonable diligence, could not have discovered these true facts independently prior to purchasing the Product.

58.     The facts concealed and/or not disclosed to Plaintiff and the Class were material facts in that a reasonable person would have considered them important in deciding whether or not to purchase the Product.

59.     Defendants intentionally concealed and/or failed to disclose the shortcomings of the Product for the purpose of inducing Plaintiff and Class Members to act thereon.

60.     Plaintiff and Class Members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts, as evidenced by their purchase of the Product. Had they known of the true character and quality of the Product, Plaintiff and Class Members would not have purchased (or would have paid less for) the Product.

61.     As a direct and proximate result of Defendants' misconduct, Plaintiff and Class Members have suffered actual damages. Defendants' conduct has been and is malicious, wanton, and/or reckless, and/or shows a reckless indifference to the interests and rights of others.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT AND VARIOUS
### STATE CONSUMER PROTECTION STATUTES
(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

62.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

63.     The ICFA, 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

64.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in connection with trade and commerce, as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS § 505/2.

65.     Other states across the Country have enacted substantially similar consumer protection statutes which require the same or similar showings of proof, and which prevent the unlawful conduct described herein.[11]

66.     Defendants violated the ICFA and other various state consumer protection statutes by using deceptive acts and practices, including making false representations concerning the effectiveness of the Product, while knowing that its representations were untrue, and concealing its misrepresentations as described above.

---

[11] *See* Alaska Stat. § 45.50.471, *et seq.*, Ark. Code § 4-88-101, *et seq.*, Colo. Rev. Stat. § 6-1-105, *et seq.*, Conn. Gen. Stat. § 42-110b, *et seq.*, 6 Del. Code § 2511, *et seq.*, D.C. Code § 28-3901, *et seq.*, Fla. Stat. § 501.201, *et seq.*, Ga. Code Ann. § 10-1-393, *et seq.* and Ga. Code Ann. § 10-1-370 *et seq.*, Haw. Rev. Stat. § 480, *et seq.*, Idaho Code § 48-601, *et seq.*, Kan. Stat. § 50-623, *et seq.*, Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*, M.G.L. c. 93A, *et seq.*, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, Md. Com. Law Code § 13-101, *et seq.*, Mich. Stat. § 445.901, *et seq.*, Minn. Stat. § 8.31, *et seq.*, Missouri Stat. § 407.010, *et seq.*, Neb. Rev. Stat. § 59-1601, *et seq.*, Nev. Rev. Stat. § 598.0903, *et seq.*, N.H. Rev. Stat. § 358-A:1, *et seq.*, N.J. Rev. Stat. § 56:8-1, *et seq.*, N.M. Stat. § 57-12-1, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, N.D. Cent. Code § 51-15-01, *et seq.*, Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*, Or. Rev. Stat. § 646.605, *et seq.*, R.I. Gen. Laws. § 6-13.1-1, *et seq.*, S.C. Code Laws § 39-5-10, *et seq.*, S.D. Code Laws § 37-24-1, *et seq.*, Tex. Bus. & Com. Code § 17.45, *et seq.*, 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*, Wash. Rev. Code. § 19.86.010, *et seq.*, W. Va. Code § 46A-6-101, *et seq.*, Wis. Stat. Ann. § 100.18, *et seq.*

67.     Defendants intended that Plaintiff and each of the other members of the Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

68.     As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Class and Illinois Subclass have sustained damages in an amount to be proven at trial.

69.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**SECOND CLAIM FOR RELIEF**
**FRAUD BY UNIFORM WRITTEN MISREPRESENTATION AND OMISSION**
(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

70.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

71.     Defendants uniformly, and intentionally, willfully, falsely, and knowingly, misrepresented material facts in writing that relate to the character and quality of the Product. Specifically, Defendants intentionally and willfully misrepresented certain benefits and performance characteristics of the Product in various media advertising and point of sale materials disseminated or caused to be disseminated by Defendant.

72.     Defendants represented to Class Members, by affirmative misrepresentations and omissions, that the Product provides benefits over and above what could actually be achieved, even though Defendants had no competent, credible, and reliable scientific evidence that is sufficient in quality and quantity, based on standards generally acceptable in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate its claims regarding the superior effectiveness of the Product.

73. Defendants' uniform written misrepresentations were made with the intent that the general public, including Plaintiff and Class, would rely upon them. Defendants' representations were made with knowledge of the falsity of such statements or in reckless disregard of the truth thereof and gave Defendants an unjust advantage and caused a loss to Plaintiff and Class Members. Defendants' claims of superior effectiveness are so central to the consumer's selection of the Product that the Defendants knew and intended that consumers would rely on those misrepresentations in determining whether to purchase the Product.

74. In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff and Class Members purchased the Product for their intended and reasonably foreseeable purposes. Plaintiff and Class Members were unaware of the true facts concerning the effectiveness of the Product, which were concealed from the Plaintiff and the Class Members. If Plaintiff and Class Members had been aware of these concealed facts, Plaintiff and Class members would not have purchased the Product. Plaintiff's and Class Members' reliance on the representations of the Defendants was reasonable.

75. Defendants misrepresented material facts with the intent to defraud Plaintiff and the Class Members. Plaintiff and the Class Members were unaware of the intent of Defendants and relied upon these representations in agreeing to purchase the Product.

76. In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff and Class Members purchased the Product and did not benefit from the Product as represented, the direct and proximate result of which was injury and harm to Plaintiff and Class Members because:

a) they would not have purchased the Product if the true facts concerning its effectiveness had been known; and

b) the Product did not (and cannot) perform as promised.

## THIRD CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY

(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

77.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

78.     Plaintiff, and each member of the Classes formed a contract with Defendants at the time Plaintiff and the other Class members purchased the Product.  The terms of the contract includes the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Classes and Defendants.

79.     Defendants purport through its advertising, labeling, marketing and packaging to create an express warranty that the Product was effective at providing weight loss and appetite suppression.

80.     Plaintiff and the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

81.     Defendants breached express warranties about the Product and its qualities because Defendants' statement about the Product was false and the Product does not conform to Defendants' affirmations and promises described above.  Plaintiff and the Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product contained.

82.     As a result of Defendants' breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY**

(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

83.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

84.     The Product, which is a supplement intended for human consumption, was sold in a sealed container to the Class Members.  Because the Product was sold in a sealed container for human consumption, public policy demands that an implied warranty be imposed upon the manufacturer, packager, and distributor of the product, and that said warranty runs with the sale of the Product for the benefit of consumer use.

85.     Defendants knew and intended that the Class Members would be the ultimate consumers of the Product.

86.     The Defendants sold the Product into the stream of commerce, and the Defendants are merchants with respect to goods such as the Product at issue.

87.     The Product was not merchantable at the time of sale, because it did not—nor could not—have any impact related to the representations as alleged herein.

88.     The Plaintiff and Class Members did not receive the benefit of their bargain in purchasing the Product.

89.     Because of Defendants' breach of the implied warranty, the Plaintiff and Class Members were injured.

90.     As a result of Defendants' breach, Plaintiff and Class Members have sustained damages.

## FIFTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

91.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

92.     Through their numerous misleading, unfair and deceptive claims and misrepresentations, Defendants made millions of dollars from the sale of their Product. The large profits were made at the expense of Plaintiff and each member of the Class, who relied upon Defendants' material representations and omissions.

93.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the Product, which Defendants knowingly appreciated and accepted.

94.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchase of the Product.  Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Product if the true facts would have been known.

95.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## SIXTH CLAIM FOR RELIEF
### INJUNCTIVE RELIEF
(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

96.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

97.     Defendants have refused to act on grounds generally applicable to Plaintiff and Class Members, thereby making final injunctive relief appropriate.

98.     Defendants' conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for proven scientific facts in a clear attempt to sell a product that is not effective or is, at minimum, no more effective than other, less expensive products.

99.     Defendants persist in their deceptive and unfair marketing and sales practices concerning the Product, to the detriment of consumers across the country.

100.    If Defendants are allowed to continue with these practices, consumers—including Plaintiff and Class Members—will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop Defendants' improper conduct concerning its marketing and sale of the Product.

101.    Plaintiff and Class Members are therefore entitled to an injunction requiring Defendants to cease and undertake to remedy the effects of its unfair and deceptive practices relating to the marketing and sale of the Product, as alleged herein, including the effects thereof.

102.    Plaintiff seeks a Court Order requiring Defendants to do the following:

a)  discontinue advertising, marketing, packaging, and otherwise representing its Product as being superior to conventional products;

b)  undertake an immediate public information campaign to inform the Plaintiff and Class Members of the truth about Defendant's Product and Defendant's prior practices relating thereto; and

c)  correct any erroneous impression the Plaintiff and Class Members may have derived concerning the nature, characteristics, or qualities of the Product, including without limitation, placing corrective advertising and providing written notice to the general public.

## SEVENTH CLAIM FOR RELIEF
### DECLARATORY RELIEF
(Plaintiff, Individually, and on Behalf of the Class and, in the Alternative, the Illinois Subclass)

103.    Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

104.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

105.    Pursuant to 28 U.S.C. § 2201, et seq., there is an actual controversy between Defendants and Plaintiff concerning whether:

    a)   Defendants have misrepresented the effectiveness of the Product; and

    b)   Defendants knew or should have known of the misrepresentations regarding the efficacy of the Product.

106.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

107.    Despite the studies which have proven Defendants representations false, Defendants continued to represent the effectiveness of the Product, and have otherwise failed to correct those misrepresentations.

108.    Accordingly, based on Defendants' repeated and continued misrepresentations, Plaintiff seeks a declaration that the Defendants have misrepresented the efficacy of the Product and that their actions are unlawful.

109.    The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Product. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Anita Foster, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an Order awarding the following relief:

A. Declaring that this action may be maintained as a class action, certifying the Classes as requested herein, appointing Plaintiff as the Class Representative, and appointing the undersigned as Class Counsel;

B. Enjoining Defendants from the unlawful practices and statutory violations asserted herein;

C. Declaring Defendants' practices to be unlawful;

D. A judgment awarding Plaintiff and each of the other members of the National Class and Illinois Subclass their actual damages in an amount according to proof for their unlawful conduct, as alleged herein;

E. A judgment awarding Plaintiff and each of the other members of the Class and Illinois Subclass compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F. An award of punitive damages, to the maximum extent permitted by law;

G. A judgment awarding Plaintiff and the other members of the National Class and Illinois Subclass restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendants as a result of their wrongful conduct, as alleged herein;

H. An award of delay damages, to the maximum extent permitted by law;

I. Attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

J. An award of pre- and post-judgment interest; and

K. All other and further relief that the Court deems necessary, just, and proper.

**JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff, Anita Foster, hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: November 10, 2014                    Respectfully submitted,


                                        By:   /s/ Edward A. Wallace
                                             Edward A. Wallace
                                             Amy E. Keller
                                             **WEXLER WALLACE LLP**
                                             55 West Monroe Street, Suite 3300
                                             Chicago, IL 60610
                                             Tel: (312) 346-2222
                                             Fax: (312) 346-0022
                                             eaw@wexlerwallace.com
                                             aek@wexlerwallace.com

                                             Jordan L. Chaikin (*Pro Hac Vice Forthcoming*)
                                             **PARKER WAICHMAN LLP**
                                             27300 Riverview Center Blvd, Suite 103
                                             Bonita Springs, FL 34134
                                             Tel: (239) 390-1000
                                             Fax: (239) 390-0055
                                             jchaikin@yourlawyer.com

                                             Nick Suciu III (*Pro Hac Vice Forthcoming*)
                                             **BARBAT, MANSOUR & SUCIU PLLC**
                                             434 West Alexandrine #101
                                             Detroit, MI 48201
                                             Tel: (313) 303-3472
                                             Fax: (248) 698-8634
                                             nicksuciu@bmslawyers.com

                                             *Counsel for Plaintiff and Putative Class*